IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LABORERS' INTERNATIONAL UNION OF
NORTH AMERICA LOCAL 1353,

                Plaintiff,

v.                                          CIVIL ACTION NO. 2:18-cv-01522

WEST VIRGINIA AMERICAN WATER COMPANY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Laborers' International Union of North America Local 1353 ("the Union") filed this action pursuant to Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, seeking to compel arbitration. (ECF No. 1 at ¶ 5.) Before the Court is West Virginia-American Water Company's ("WV American Water") Motion to Dismiss. (ECF No. 7.) For the reasons discussed herein, the Court **GRANTS** the motion.

*I.    BACKGROUND*

The Union is a labor organization that represents employees of WV American Water in the Kanawha Valley District in West Virginia. (ECF No. 1 at ¶¶ 1, 4.) The Union and WV American Water negotiated a collective bargaining agreement, effective April 26, 2017 through April 26, 2022 ("CBA"). (*Id.* at ¶ 4; ECF No. 7-1 at 38.) Under Article V of the CBA, disputes between the parties are generally governed by a broad arbitration clause. Article V outlines a three-step

grievance procedure and a general appeal process to arbitration and states that "[s]hould any differences or disputes . . . arise between the Union, or any employee or employees, and [WV American Water] . . . a sincere effort shall be made to settle it at the earliest practicable time through the grievance and arbitration procedure . . . ." (ECF No. 1-1 at 2–3.)

Jimmy Mitchell ("Mitchell") is a former employee of WV American Water and Union member whose termination is at the center of this action. On July 16, 2018, Mitchell was terminated for "alleged[ly] removing a safety mechanism" from his work vehicle. (*Id.* at ¶ 7; *see also* ECF No. 7-2 at 7.) On the same day, the Union commenced grievance proceedings in connection with Mitchell's termination pursuant to the CBA ("Mitchell Grievance"). (ECF No. 1 at ¶ 7.) The Union proceeded through two steps of the grievance process, but WV American Water consistently denied the grievance on the basis that the dispute raised therein is not a grievable matter under the CBA. (*Id.* at ¶ 10.) Since then, WV American Water has "refused to participate in" step-three of the grievance process or proceed to arbitration contending that the Mitchell Grievance is not subject to the grievance process or arbitration under the CBA. (*Id.* at ¶¶ 10, 11, 14.)

The Union now asserts that "the CBA has no provisions or terms which permit [WV American Water] to refuse to arbitrate a grievance such as the Mitchell Grievance." (*Id.* at ¶ 15.) The Union maintains that the Mitchell Grievance is "an issue that is subject to the grievance and arbitration procedures of the CBA" and that "[WV American Water] is in violation of the provisions of the CBA by refusing to proceed with" arbitration. (*Id.* at ¶¶ 16, 20.)

On January 22, 2019, WV American Water filed its motion to dismiss, arguing that there is no substantive obligation under the CBA to arbitrate the Mitchell Grievance. (ECF No. 7.) On

2

January 31, 2019, the Union filed a response, (ECF No. 9), and WV American Water filed a reply on February 7, 2019, (ECF No. 10). As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." *See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). This pleading rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain enough facts, accepted as true, "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In evaluating the sufficiency of a complaint, a court separates the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678. A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III. DISCUSSION

The sole issue before the Court is to determine the arbitrability of the Mitchell Grievance. The Supreme Court has repeatedly emphasized that "[a] party cannot be compelled to submit a dispute to arbitration unless he contractually has agreed to do so." *Cumberland Typographical Union No. 244 v. The Times & Alleganian Co.*, 943 F.2d 401, 404 (4th Cir. 1991) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)); *see also Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 250–51 (1977) (noting prior decisions holding that "a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so."). Absent clear and unmistakable language to the contrary, the question of whether a dispute under a collective bargaining agreement is arbitrable is one for the courts, not an arbitrator. *See AT&T Techs, Inc.*, 475 U.S. at 649. The CBA at issue here provides no delegation of the threshold determination of arbitrability to an arbitrator; therefore, this determination is properly before this Court.

The Supreme Court has established the following four guiding principles to determine the arbitrability of a labor dispute: (1) the parties must have contracted to submit the grievance to arbitration; (2) the court must determine whether the contract provides for arbitration of the particular dispute at issue; (3) the court must not decide the merits of the dispute while determining its arbitrability; and (4) if the contract contains an arbitration clause, then a presumption of arbitrability arises. *See Cumberland Typographical Union*, 943 F.2d at 404 (citing *AT&T Techs., Inc.*, 475 U.S. at 650). The Court has made clear that, "except for matters specifically excluded from arbitration in the collective bargaining agreement, all questions on which the parties disagree must be submitted to arbitration." *Id.* (citing *United Steelworkers v. Enter. Wheel & Car Corp.*,

363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960)). *See also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (stating that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citation omitted).

In ruling on a motion to dismiss, the Court may consider, in addition to the pleadings, "pertinent documents" without converting the motion into one for summary judgment. *See Thompson v. Prudential Ins. Co. of Am.*, No. 2:14-cv-13357, 2014 WL 6886172, at *3 (S.D. W. Va. Dec. 4, 2014). WV American Water's motion calls upon the Court to consider the parties' CBA, the Union's grievance and the entire grievance record at issue in this case. (*See* ECF Nos. 7-1, 7-2.) While the complete CBA and the grievance record are not attached to the Complaint, the Court will consider these documents in ruling on the motion because they are integral to the Union's pleading and there is no dispute as to their authenticity.

As a general matter, Article V of the CBA contains an arbitration procedure in the event the parties cannot resolve a dispute through the three-step grievance process. (ECF No. 7-1 at 9.) However, Article XVII, Section 17.1 limits the type of grievance that may be arbitrated. This exclusionary provision provides the following:

> It is understood and agreed, without limiting the Employer's rights to discharge Employees, That:
> a) **The fact that an employee knowingly turns off, circumvents, or defeats any safety device, mechanism, safeguard, etc.,** or;
> b) The fact that an employee knowingly makes incorrect entries in any document(s) or record(s) which shall include log books, timesheets or work orders
> **Shall be conclusively deemed to be just and sufficient cause for dismissal of the employee, provided that nothing herein shall prevent the employee from**

**utilizing the grievance procedure to determine whether or not the employee has committed the acts outlined in (a) or (b) above.**

(ECF No. 7-1 at 33) (emphasis added). Pursuant to this exemption, it is clear the parties intended to exclude from arbitration the grievance at issue here.

The written grievance filed by the Union plainly states as follows:

> We are filing this grievance on behalf of Jimmy Mitchell due to wrongful termination. We feel due to the circumstances that the punishment was too harsh. We feel he should be reinstated and proper discipline should be imposed.

(ECF No. 7-2 at 1.) WV American Water denied the grievance on the basis that the Union's efforts to grieve the disciplinary penalty imposed on Mitchell were precluded by Article XVII, Section 17.1 of the CBA. (*Id.* at 2.) The Union then appealed WV American Water's denial to the second step of the grievance process. In so doing, the Union filed the same, original written grievance. (*Id.* at 5–6.) WV American Water once again answered that the issues raised therein are not grievable under Article XVII, Section 17.1 of the CBA. (*Id.* at 7.) In its answer, WV American Water noted that "the [U]nion has not made any assertion whatsoever that the grievant did not remove the safety guard from the vehicle and put it back into service." (*Id.*) Upon receiving the answer denying its grievance at stage two, the Union appealed WV American Water's response to step three of the grievance process. In its appeal, the Union reiterated that it was grieving the level of discipline imposed on Mitchell. Specifically, the Union stated the following: "We do not believe Mitchell should have received ANY discipline and that the discipline was egregious, erroneous and a violation of the contract as well as flying in the face of Federal Law." (*Id.* at 3.) Consistent with its prior answers, WV American Water denied the grievance because the Union's challenge to the specific level of discipline administered to Mitchell was not arbitrable or grievable under the CBA. (*Id.* at 9.)

6

Though the written terms of the Union's grievance are plain and clear, the Union only now—after completing the grievance process—disputes WV American Water's interpretation of the substantive issues raised in the grievance. In particular, the Union claims that the grievance challenges not only the discipline administered to Mitchell but also WV American Water's conclusion that Mitchell did in fact remove a safety device. (ECF No. 9 at 8.) WV American Water argues that the Union is improperly attempting to use this lawsuit to re-write the grievance filed with the company into one that would fall outside the scope of the exclusionary provision of the CBA. (ECF No. 10 at 2.) Indeed, the grievance dispute the Union now raises is markedly different from the written grievance that was actually filed with WV American Water nearly seven months prior.

Significant to this point is the requirement under Article V, Section 5.1 of the CBA that a grievance be "in writing" and "stat[e] the basic facts and contract provisions upon which the Union relies." (ECF No. 7-1 at 9.) The Union makes no assertions in the original grievance or its two subsequent appeals that Mitchell did not commit the act for which he was terminated. For instance, the grievance does not claim that Mitchell did not remove a safety device, that he removed an item that was not safety-related, or that he removed a device that he did not know at the time was safety-related. The Union was advised during step-one of the grievance process that its dispute was not grievable or arbitrable under the CBA. (ECF No. 7-2 at 2 (stating that "[t]he union is grieving the penalty assessed as 'to [sic] harsh.' Based on the language of 17.1 of the agreement, the penalty is not grievable.").) Nevertheless, the Union proceeded on its original claim that Mitchell's "punishment was too harsh", (*see id.* at 1), throughout the entire grievance process without providing clarification or supplementing the written basis for the grievance. It

was not until the Union filed its response to the instant motion to dismiss on January 31, 2019, that the Union raised a challenge to the circumstances that led to Mitchell's termination. As WV American Water rightfully argues, "the Union's Response brief cannot retroactively supply missing facts and contract provisions that were never part of the grievance filed over Mitchell's discharge." (ECF No. 10 at 5.) Allowing such alterations to the Mitchell Grievance at this stage would circumvent the terms of the parties' negotiated collective bargaining agreement and run counter to the underlying purpose of the Labor-Management Relations Act to encourage a wide variety of such agreements. *See Dist. 2 Marine Eng'rs Beneficial Ass'n-Associated Mar. Officers, AFL-CIO v. Grand Bassa Tankers, Inc.*, 663 F.2d 392, 397 (2d Cir. 1981) (recognizing that "[t]he [Act] represented a far-reaching and many-faceted legislative effort to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process." (quoting *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 509 (1962)).

Even now, the Union willingly admits that "[u]pon Mitchell's return to work, he removed the bonnet" and "was terminated for removing the bonnet that had been placed over the steering wheel of his assigned work vehicle." (ECF No. 9 at 2.) Considering these admissions, the Union cannot be heard here to argue that Mitchell did not commit the act which led to his termination.

In sum, the parties have demonstrated in the arbitration provision of Article XVII, Section 17.1 that they intended to exclude particular discharges from the grievance and arbitration process. The Mitchell Grievance, which is based on Mitchell's termination for allegedly removing a safety device, falls within the purview of this clear and unambiguous exemption clause. Having found that the grievance is not subject to arbitration pursuant to the plain language of the CBA, the Union's Complaint seeking to compel arbitration must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, WV American Water's Motion to Dismiss, (ECF No. 7), is **GRANTED**. The Court **DISMISSES** this case and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 17, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE